United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 2, 1997 Decided November 21, 1997 

 No. 95-1538

 OZ Technology Incorporated, 

 Petitioner

 v.

 Environmental Protection Agency, 

 Respondent

 Consolidated with

 No. 96-1393

 On Petitions for Review of Orders of the 

 Environmental Protection Agency

 David H. Leroy argued the cause for petitioner, with 
whom Charles B. Lempesis was on the briefs.


 Michael J. Zevenbergen, Trial Attorney, U.S. Department 
of Justice, argued the cause for respondent, with whom Lois 
J. Schiffer, Assistant Attorney General, Karen L. Egbert, 
Attorney, and Jan M. Tierney, Attorney, Environmental 
Protection Agency, were on the brief.

 Before: Edwards, Chief Judge, Sentelle and Randolph, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: Section 612(c) of the Clean Air Act 
("CAA" or "Act") instructs the Administrator of the Environ-
mental Protection Agency ("EPA" or "agency") to promulgate 
rules that prohibit the replacement of ozone-depleting com-
pounds with substances "which [she] determines may present 
adverse effects to human health or the environment." 42 
U.S.C. s 7671k(c) (1994). In the instant case, EPA designat-
ed Petitioner OZ Technology Inc.'s ("OZ") product HC-12a as 
an unacceptable substitute for CFC-12 (an ozone-depleting 
substance commonly known as "freon") for end-uses other 
than industrial process refrigeration. 60 Fed. Reg. 31,092, 
31,098 (1995). In so doing, EPA effectively banned HC-12a 
for those end-uses. See 40 C.F.R. s 82.174 (1996). Subse-
quently, EPA rejected a request by OZ, filed pursuant to 
regulations implementing section 612(d) of the Act, seeking to 
remove HC-12a from the list of unacceptable substitutes and 
add it to the list of acceptable substitutes. 61 Fed. Reg. 
51,018 (1996). OZ then petitioned for review, challenging 
EPA's initial decision to put HC-12a on the unacceptable list 
and the agency's subsequent refusal to amend the list.

 On the record at hand, we must reject the petition for 
review. As EPA found, OZ failed in this case to submit valid 
data supporting its claim that HC-12a should be added to the 
list of acceptable substitutes. In light of OZ's acknowledg-
ment that HC-12a was flammable, and EPA's previous deci-
sion prohibiting a very similar compound manufactured by 
OZ for the same end-uses, EPA's actions banning HC-12a 
reasonably satisfied its obligation under section 612 to reduce 
overall risk to human health and the environment.


 I. Background

A. The Statutory and Regulatory Regime

 Title VI of the CAA, as amended in 1990, requires the 
phase-out of CFC-12 and other substances that have the 
capability of depleting the stratospheric ozone layer. 42 
U.S.C. ss 7671-7671q (1994). Section 612 of the Act in-
structs EPA to regulate replacement substances to reduce 
overall risk to human health and the environment. 42 U.S.C. 
s 7671k(c). Section 612(c) requires EPA to publish a list of 
the substitutes prohibited for specific uses and a list of the 
substitutes that are safe alternatives for specific uses. Id. 
Section 612(d) of the Act grants any person the right to 
petition EPA to add a substance or to delete a substance from 
either of the lists published pursuant to section 612(c). 42 
U.S.C. s 7671k(d).

 EPA promulgated regulations to implement section 612, 
known as the Significant New Alternatives Policy ("SNAP") 
program. 59 Fed. Reg. 13,044, 13,147 (1994) (codified at 40 
C.F.R. pt. 82). Under the SNAP program, any person who 
has developed a substitute for an ozone-depleting substance 
must notify EPA before introducing the substitute into inter-
state commerce. 40 C.F.R. s 82.176(a). The person must 
submit information concerning, among other things, the likely 
end-uses and flammability of the proposed substitute. Id. 
s 82.178(a)(3), (9). With respect to flammability, the submit-
ter must provide the flash point and flammability limits of the 
product, as well as information on the procedures used for 
determining the flammability limits. Id. s 82.178(a)(9). If a 
substitute is flammable, "the submitter must analyze the risk 
of fire resulting from the use of [the] substitute and assess 
the effectiveness of measures to minimize such risk." Id. 
"For substitutes that will be used in consumer applications, 
documentation of testing results conducted by independent 
laboratories should be submitted, where available." Id.

 Once the information submitted to EPA is "adequate to 
support analysis of the submission," id. s 82.180(a)(3), the 
agency decides, based on the information submitted and any 
other information available to EPA, whether the substitute is 


acceptable, unacceptable, or acceptable subject to certain use 
restrictions for the proposed end-uses. Id. s 82.180(b). 
Where EPA proposes to list a substitute as unacceptable for 
certain end-uses, EPA follows notice-and-comment rulemak-
ing procedures. Id. s 82.180(a)(8)(ii). If EPA then deter-
mines that a substitute is unacceptable for a specific end-use, 
the SNAP program prohibits replacing ozone-depleting sub-
stances with the substitute proposed for that end-use. Id. 
s 82.174(b)-(d). Under section 612(d) of the Act, any person 
may petition EPA to amend existing listing decisions or to 
add a new substance to any of the SNAP lists. Id. s 82.184.

B. EPA's Designation of HC-12a as Unacceptable

 OZ has developed a substance called HC-12a as a substi-
tute for CFC-12. HC-12a has end-use applications in refrig-
eration and air conditioning, including motor vehicle air condi-
tioning systems and household refrigerators and freezers. In 
March 1994, OZ began marketing HC-12a. Petitioner's Br. 
at 13. Soon thereafter, EPA informed OZ that it was re-
quired under SNAP to submit a notice of intent to introduce 
HC-12a into interstate commerce. Id. at 14. OZ sent docu-
mentation to EPA in a purported effort to comply with the 
SNAP notice requirement. Joint Appendix ("J.A.") 
853-76. In September 1994, however, EPA formally pro-
posed to list HC-12a (identified as Hydrocarbon Blend B) as 
an unacceptable substitute for CFC-12 for end-uses other 
than industrial process refrigeration. 59 Fed. Reg. 49,108, 
49,112 (1994).

 OZ subsequently submitted comments to EPA, along with 
documentation to initiate a petition under section 612(d). The 
gist of OZ's position was that EPA should delete HC-12a 
from the "proposed unacceptable" list and add it to the list of 
acceptable substitutes. Because EPA had not promulgated a 
final rule on HC-12a, the documentation submitted by OZ to 
support a 612(d) petition was accepted as an additional com-
ment on the proposal. See EPA's Supplemental Response To 
Comments On The Proposal To Find HC-12a Unacceptable, 
July 18, 1996 ("July 1996 Decision Doc."), J.A. 766. Later in 
the comment period, other documents concerning the flamma-


bility risks of HC-12a were submitted to EPA, either by OZ 
or by other parties on its behalf. See Letter from Charles B. 
Lempesis to EPA, June 5, 1995, J.A. 897-99 (listing submis-
sions); Attachment to Letter from EPA to OZ, August 30, 
1996 ("August 1996 Decision Doc."), J.A. 784 (identifying 
additional submissions). On June 13, 1995, EPA took final 
action listing HC-12a as an unacceptable substitute for end-
uses other than industrial process refrigeration, citing con-
cern about flammability. 60 Fed. Reg. at 31,098.

 Prior to the action on HC-12a, EPA had designated as 
unacceptable a very similar product of OZ, namely OZ-12. 
OZ-12 (identified as Hydrocarbon Blend A) was included on 
the unacceptable list because of concerns over flammability 
and the lack of an adequate risk assessment showing that 
OZ-12 could be used in end-uses other than industrial process 
refrigeration. 59 Fed. Reg. 13,044, 13,082, 13,122-24 (1994). 
In processing the application for OZ-12, EPA officials ex-
plained to OZ, in at least one meeting, four letters, and a 
phone conversation, what was required in a valid risk assess-
ment. J.A. 811-15, 819-20, 825-26.

 EPA's decision to designate HC-12a as unacceptable coin-
cided with the agency's rejection of a section 612(d) petition 
submitted by OZ for OZ-12, requesting that EPA delete OZ-
12 from the unacceptable list and add it to the acceptable list. 
60 Fed. Reg. 49, 407 (1995). On July 25, 1995, EPA wrote a 
letter to OZ stating that the company's submissions regarding 
the flammability risks of HC-12a were inadequate for the 
same reasons that the company's submissions for OZ-12 were 
inadequate. J.A. 770. In an attachment to another letter 
which EPA sent to OZ that same day, EPA explained at 
length why the company's submissions regarding the flamma-
bility risks of OZ-12 were insufficient to warrant listing the 
compound as an acceptable substitute. Response to OZ 
Technology, Inc. Petition To Find OZ-12 Acceptable ("July 
1995 Decision Doc."), J.A. 772-79. EPA's communications 
with OZ in July 1995 did not explain why additional documen-
tation submitted by OZ for HC-12a but not for OZ-12 also 
was insufficient to warrant listing HC-12a as acceptable.


 On August 14, 1995, OZ petitioned the United States Court 
of Appeals for the Ninth Circuit for judicial review of EPA's 
June 13, 1995 action listing HC-12a as an unacceptable 
substitute. The petition was transferred to this court, which 
granted EPA's motion to remand the administrative record. 
See Order Granting Motion for Voluntary Remand of the 
Record (Apr. 23, 1996). During the remand period, EPA 
addressed some of the documentation that had been submit-
ted by OZ for HC-12a but not for OZ-12. See July 1996 
Decision Doc., J.A. 766-69 (addressing Exhibits T through Z 
of OZ's November 1994, section 612(d) petition for HC-12a).

C. EPA's Denial of OZ's Section 612(d) Petition Regard-
 ing HC-12a

 In December 1995, after OZ sought judicial review of 
EPA's final rule designating HC-12a as an unacceptable 
substitute, OZ submitted another petition to the agency pur-
suant to section 612(d), requesting that EPA list HC-12a as 
acceptable. ("1995 Petition"). EPA rejected the 1995 Peti-
tion, 61 Fed. Reg. 51,018 (1996), and issued a full response to 
the many documents submitted by OZ covering HC-12a. See 
August 1996 Decision Doc., J.A. 784-810. EPA concluded 
that OZ had not submitted a "scientifically valid, comprehen-
sive risk assessment" that would justify changing the designa-
tion of HC-12a from unacceptable to acceptable. EPA Let-
ter, August 1996, J.A. 780. OZ petitioned for judicial review 
of this determination, and this court granted the parties' joint 
motion to consolidate the two petitions for review. See Order 
Granting Joint Motion to Consolidate (Oct. 29, 1996).

 II. Discussion

 This court may grant a petition challenging an action of 
EPA under section 612 of the Act if it is "arbitrary, capri-
cious, an abuse of discretion, or otherwise not in accordance 
with law." 42 U.S.C. s 7607(d)(9)(A) (1994). This provision 
commands essentially the same standard of review as the 
analogous provision contained in the Administrative Proce-
dure Act, 5 U.S.C. s 706 (1994). Ethyl Corp. v. EPA, 51 F.3d 


1053, 1064 (D.C. Cir. 1995). And, as the Supreme Court has 
made clear, the arbitrary and capricious standard has certain 
clear parameters:

 The scope of review under the "arbitrary and capricious" 
 standard is narrow and a court is not to substitute its 
 judgment for that of the agency. Nevertheless, the 
 agency must examine the relevant data and articulate a 
 satisfactory explanation for its action including a "ration-
 al connection between the facts found and the choice 
 made." In reviewing that explanation, we must "consid-
 er whether the decision was based on a consideration of 
 the relevant factors and whether there has been a clear 
 error of judgment." Normally, an agency rule would be 
 arbitrary and capricious if the agency has relied on 
 factors which Congress has not intended it to consider, 
 entirely failed to consider an important aspect of the 
 problem, offered an explanation for its decision that runs 
 counter to the evidence before the agency, or is so 
 implausible that it could not be ascribed to a difference in 
 view or the product of agency expertise. The reviewing 
 court should not attempt itself to make up for such 
 deficiencies; we may not supply a reasoned basis for the 
 agency's action that the agency itself has not given. We 
 will, however, "uphold a decision of less than ideal clarity 
 if the agency's path may reasonably be discerned."

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 
463 U.S. 29, 43 (1983) (citations and footnote omitted). It is 
also well understood that "[t]he rationale for deference is 
particularly strong when the EPA is evaluating scientific data 
within its technical expertise." International Fabricare Inst. 
v. USEPA, 972 F.2d 384, 389 (D.C. Cir. 1992).

 OZ contends that EPA acted arbitrarily and capriciously in 
initially designating HC-12a as an unacceptable substitute for 
CFC-12 for all end-uses other than industrial process refrig-
eration, and in rejecting OZ's 1995 Petition. Petitioner's Br. 
at 24. According to OZ, EPA's decision was contrary to the 
documentation submitted in support of HC-12a. Id. at 24-25. 
OZ also argues that EPA acted unlawfully in failing to 


provide guidance on the kind of data or risk analysis that the 
company was required to submit, beyond the documentation 
that was offered, in order for EPA to decide that HC-12a was 
safe under the CAA. Id. at 26-28.

 EPA responds that OZ had the burden of demonstrating 
through a scientifically valid risk analysis that HC-12a did 
not pose unacceptable flammability risks under CAA section 
612(c). EPA also asserts that it reasonably determined that 
OZ failed to submit an adequate risk analysis, and that the 
agency therefore justifiably declined to decide whether the 
risks posed by HC-12a in fact were acceptable under the Act. 
Respondent's Br. at 16-22. We substantially agree with EPA 
on both counts. Given OZ's acknowledgment that its product 
is flammable, as well as EPA's mandate to regulate under 
section 612 to reduce overall risk to human health, EPA's 
actions with respect to HC-12a were reasonable.

 Documents submitted on behalf of OZ to EPA recognized 
the flammability of HC-12a. See Draft Test Protocol--Phase 
I, J.A. 886 ("OZ ... produces a propane-based flammable 
refrigerant designated as HC-12a."). Moreover, before con-
sidering OZ's submissions for HC-12a, EPA already had 
designated a very similar compound, OZ-12, as unacceptable 
because of flammability concerns. Given these circum-
stances, OZ was required to submit data on HC-12a, analyz-
ing "the risk of fire resulting from the use of such a substi-
tute and assess[ing] the effectiveness of measures to minimize 
such risk." 40 C.F.R. ss 82.178(a)(9), 82.184(c). The regula-
tions make it clear that EPA was fully justified in rejecting 
OZ's section 612(d) petition when the company failed to 
supply adequate data to support that petition:

 If the petition is inadequately supported, the Agency will 
 query the petitioner to fill any data gaps before the 90-
 day review period begins, or may deny the petition 
 because data are inadequate.

Id. s 82.184(d)(4) (emphasis added).

 OZ claims that EPA was obligated to conduct its own tests 
on HC-12a before determining that it was unacceptable for 


OZ's intended end-uses. This position finds no support in the 
statute. OZ sought to introduce into the market a product 
with known risks to human health and the environment. In 
light of the statutory mandate of section 612, it is hardly 
surprising that EPA's regulations require the company to 
submit data defining the risk and assessing the effectiveness 
of measures to minimize the known dangers.

 Arguably, during the proceedings involving OZ's products, 
EPA officials could have been more forthcoming in respond-
ing to OZ's requests for clarification on the contents of the 
required documentation. However, it is clear from the record 
that EPA stated in no uncertain terms that OZ was obligated 
to quantify data on the flammability of HC-12a, and to use 
scientifically valid studies, in order to enable the agency to 
consider listing the compound as an acceptable substitute for 
all end-uses. See, e.g., July 1995 Decision Doc., J.A. 772-79. 
Moreover, OZ was put on notice of the requirement of a 
comprehensive risk analysis, as well as the contents of such 
an analysis, from the company's prior efforts to have the 
agency designate OZ-12 an acceptable substitute. EPA offi-
cials met with OZ about OZ-12, J.A. 811-13, and sent several 
letters to OZ outlining the contents of a risk analysis. Id. at 
811-15, 819-20, 825-26. For particular proposed end-uses for 
OZ-12, EPA referred OZ to testing guidelines produced by 
the Society of Automotive Engineers, which the agency stated 
were acceptable. Id. at 811, 814. Thus, EPA did not leave 
OZ completely without direction.

 In addition, a private consultant recommended to OZ the 
contents of what might have constituted an acceptable risk 
analysis for OZ-12. Letter from Bryant Consulting to Gary 
Lindgren, President, OZ Technology, Inc., October 12, 1993, 
J.A. 816. OZ conceded at oral argument that it did not 
undertake the procedures recommended by the consultant 
and did not ask EPA whether the recommended risk analysis 
would suffice to allow the agency to make an affirmative 
decision about any of its products under SNAP and the CAA. 
Although OZ may at times have felt stonewalled by EPA, OZ 
had only itself to blame for not pursuing leads offered by 
EPA officials and the outside consultant.


 Thus, the principal focus of our inquiry is on EPA's conten-
tion that it reasonably determined that OZ failed to submit a 
valid risk analysis of HC-12a. During the course of its 
dealings with OZ, EPA produced three documents that, in 
increasing detail, explained why the data submitted by OZ 
were insufficient. See July 1995 Decision Doc., J.A. 772-79; 
July 1996 Decision Doc., J.A. 766-69; August 1996 Decision 
Doc., J.A. 780-810. For example, EPA pointed out that OZ's 
submissions analyzed refrigerants that were less flammable 
than HC-12a, or used a smaller charge of refrigerant than 
would be used in actual practice, or both, J.A. 773, 791; that 
the submissions failed to analyze all of the risks posed by the 
end-uses in question, id. at 773, 790-91; and that the submis-
sions failed to quantify risks at all, or attempted to do so with 
unrealistically low assumptions unsupported by empirical 
data. Id. at 776-78, 795, 805-06.

 Given the comprehensive scope of EPA's responses to OZ's 
submissions and OZ's utter lack of explanation as to how 
EPA's responses might be inaccurate or unfounded, we hold 
that EPA's determination that OZ failed to carry its burden 
under SNAP was justified. See Ethyl Corp., 51 F.3d at 1059 
(holding, under another provision of the CAA, that "[t]here is 
no doubt that [EPA] has the authority to make the factual 
determination of whether an applicant has submitted enough 
data ... to satisfy the applicable standards, and a reviewing 
court must respect this role") (citing Ethyl Corp. v. EPA, 541 
F.2d 1, 36-37 (D.C. Cir. 1976) (en banc)). Under the circum-
stances in this case, EPA was not required to render an 
affirmative decision that HC-12a was either safe or unsafe 
under the Act. It was enough for the agency to find that the 
company had failed to address the known risk of flammability 
in a scientifically valid, comprehensive risk analysis.

 In short, we hold that EPA did not act arbitrarily and 
capriciously in designating Petitioner's product HC-12a an 
unacceptable substitute to CFC-12 for end-uses other than 
industrial process refrigeration under CAA section 612(c) and 
SNAP. We also hold that EPA did not act arbitrarily and 
capriciously in rejecting Petitioner's subsequent request un-
der CAA section 612(d) and SNAP to remove HC-12a from 


the unacceptable list for the above-mentioned end-uses and 
add the compound to the acceptable list.

 III. Conclusion

 For the reasons discussed above, OZ's petitions for review 
are denied.

 So ordered.